IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| NETAL, INC., | ) | CASE NO. BK09-82992-TJM |
| | ) | |
| Debtor(s). | ) | CHAPTER 7 |

## ORDER

Hearing was held in, Nebraska, on September 10, 2012, on the application by the Internal Revenue Service to approve its super-priority administrative expense claim (Fil. No. 284) and objections by the Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan and the Contractors, Laborers, Teamsters & Engineers Pension Plan (Fil. No. 283) and by the Chapter 7 trustee (Fil. No. 285). David G. Hicks appeared for the debtor, Mark Milton and Laurie Barrett appeared for the IRS, and Maynard H. Weinberg appeared for the union plans.

The application is denied.

This debtor filed a Chapter 11 petition on November 5, 2009. The IRS holds a federal tax lien and claims a first position security interest in the debtor's cash collateral. It filed a proof of claim for $261,375.41. The debtor and the IRS agreed to permit the debtor to use the cash collateral in return for giving the IRS a replacement lien in post-petition cash collateral and stipulated that if the adequate protection provided to the IRS was inadequate to protect the IRS against post-petition diminution in the value of its collateral, the IRS would have its diminution claim allowed as a super-priority administrative expense under 11 U.S.C. § 507(b)[1]. In 2011, the case was converted to Chapter 7 upon motion by the United States Trustee, after the debtor was unable to get a plan confirmed, file its monthly operating reports, or pay its quarterly fees. The funds available for distribution to creditors are insufficient to cover all of the claims.

---

[1]That section states:

§ 507. Priorities
. . .
>(b) If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(2) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364 (d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

The IRS has now moved for approval of its super-priority administrative expense claim, which drew objections from the Chapter 7 trustee and the union benefit plans covering the debtor's employees. The trustee's objection was a limited one objecting to the effect the motion would have on the priority of the allowed post-conversion administrative and priority claims. At the hearing, the IRS acquiesced to the trustee's position.

The main dispute concerns the benefit plans' contention that the debt owed to them for plan contributions that should have been made within 180 days prior to the bankruptcy filing takes priority over the IRS's super-priority claim, under the terms of § 724(b)[2].

The Bankruptcy Code is clear that the priority claim of the benefit plans should be paid before the IRS's claim. "Section 724(b) governs the distribution of that property of the estate against which tax liens are asserted. The section in effect dictates that, where there are tax lien claims, those claimants, rather than other secured creditors, will pay for the cost of estate administration." In re Sherrill, 78 B.R. 804, 807 (Bankr. W.D. Tex. 1987). The parties' attempt to re-order the priorities

---

[2]That section states:

§ 724. Treatment of certain liens

. . .

(b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title (other than to the extent that there is a properly perfected unavoidable tax lien arising in connection with an ad valorem tax on real or personal property of the estate) and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed —

(1) first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

(2) second, to any holder of a claim of a kind specified in section 507 (a)(1)(C) or 507 (a)(2) (except that such expenses under each such section, other than claims for wages, salaries, or commissions that arise after the date of the filing of the petition, shall be limited to expenses incurred under this chapter and shall not include expenses incurred under chapter 11 of this title), 507(a)(1)(A), 507(a)(1)(B), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

(3) third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

(4) fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

(5) fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

(6) sixth, to the estate.

via the cash collateral stipulation does not alter the unequivocal language of § 724(b). "A plain reading of § 724(b) supports the Trustee's argument that a cash collateral agreement contained in an order of a court may not override the subordination provisions of § 724(b)." In re Bino's Inc., 182 B.R. 784, 787-88 (Bankr. N.D. Ill. 1995).

The Bino's case stands as the authority on this issue. In that case, pre-petition state and federal tax liens existed on the debtor's property. After the debtor's Chapter 11 filing, the taxing authorities agreed to permit the debtor to use cash collateral in exchange for a super-priority administrative expense claim. The terms specifically provided that conversion to Chapter 7 would constitute a failure of adequate protection and the taxing authorities would be entitled to a super-priority administrative expense claim under § 507(b) to the extent their liens were subject to subordination under § 724. This agreement was incorporated into a proposed order providing for the interim use of cash collateral. The United States trustee objected to the order, arguing that it was precluded by the plain language of § 724(b).

After a hearing, the court sustained the trustee's objection, holding "that the parties to the Order may not effectively bargain away the rights provided to priority claimants by Congress in § 724(b) of the Bankruptcy Code." 182 B.R. at 787. The court studied the legislative history and the few extant cases on the issue and concluded without reservation that "[c]ash collateral agreements that effectively operate to take precedence over § 724(b) are unenforceable." Id. at 788. In distinguishing the decision in In re Buzzworm, Inc., 178 B.R. 503 (Bankr. D. Colo. 1994), which relied on policy reasons in determining that cash collateral agreements should be enforced whenever possible, even when the distribution hierarchy in the Code would seem to indicate otherwise, the Bino's court noted "[t]here is no provision in the Code making the application of § 724(b) discretionary for the judiciary or for the parties involved." 182 B.R. at 789.

Neither the IRS nor the court was able to find any authority supporting the IRS's position.

The terms of § 724(b) are clear. The court will decline the IRS's invitation to hold that § 507(b) takes precedence over § 724(b). The funds held by the Chapter 7 trustee should be used to pay claims in their statutory order of priority. As among these three claimants, the trustee's fees and administrative expense should be paid first, then the § 507(a)(5) claims of the benefit plans, and finally the tax liens of the IRS.

IT IS ORDERED: The application by the Internal Revenue Service to approve its super-priority administrative expense claim (Fil. No. 284) is denied.

DATED:     September 26, 2012

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
    *Laurie Barrett
    Mark Milton
    David G. Hicks
    M. H. Weinberg
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.